*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0141P (6th Cir.)
File Name: 00a0141p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GTE NORTH, INC.,
     *Plaintiff-Appellant,*

     *v.*

JOHN G. STRAND, et al.,
     *Defendants-Appellees.*



No. 98-1851

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 98-00038—Robert Holmes Bell, District Judge.

Argued: December 13, 1999

Decided and Filed: April 20, 2000

Before: BOGGS and NORRIS, Circuit Judges; and
FEIKENS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Patrick F. Philbin, KIRKLAND & ELLIS, Washington, D.C., for Appellant. David A. Voges, OFFICE OF THE ATTORNEY GENERAL, PUBLIC SERVICE

---

[*]The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

DIVISION, Lansing, Michigan, for Appellees. Charles W. Scarborough, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, D.C., for Intervenors. **ON BRIEF:** Patrick F. Philbin, KIRKLAND & ELLIS, Washington, D.C., for Appellant. David A. Voges, Henry J. Boynton, OFFICE OF THE ATTORNEY GENERAL, PUBLIC SERVICE DIVISION, Lansing, Michigan, for Appellees. Charles W. Scarborough, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, D.C., for Intervenors. Stephen F. Smith, David L. Lawson, Peter D. Keisler, SIDLEY & AUSTIN, Washington, D.C., for Amici Curiae.

---

## OPINION

---

BOGGS, Circuit Judge. GTE North, Inc. (GTE), an incumbent local telecommunications carrier in Michigan, sued the defendants, members of the Michigan Public Service Commission (MPSC or the Commission), under the Federal Telecommunications Act of 1996 (FTA or the Act) after the Commission issued an opinion and order directing GTE to (1) publish tariffs in which GTE would offer to sell elements of its telecommunications network at rates predetermined by the Commission, and (2) allow competitors to purchase pre-assembled platforms of GTE network elements. In its complaint, GTE alleged that the MPSC's order conflicted with, and was preempted by, the FTA, and that enforcement of the order infringed GTE's statutory rights in violation of 42 U.S.C. § 1983.

GTE moved for summary judgment, and the defendants filed a cross-motion to dismiss for lack of subject matter jurisdiction. The district court granted the defendants' motion and dismissed the case without prejudice, holding that it did not have jurisdiction to review the MPSC's order under 42 U.S.C. § 252(e)(6), the FTA provision limiting federal judicial review of state commission orders approving or rejecting final interconnection agreements, because the

by affirming state commissions' statutory role and rejecting an unduly expansive interpretation of § 252(e)(6) that would permit state regulatory authorities to insulate from federal review orders alleged to be contrary to, or preempted by, federal law.

---

where the agency rule or action giving rise to the controversy is final and not contingent upon future uncertainties or intervening agency action. *Ibid.* The hardship prong concerns the extent of the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law. *See id.* at 153.

In this case, the district court must decide whether the ripeness inquiry demands that one of GTE's competitors actually request access at the tariff rate before deciding the case, or whether the order itself gives rise to a justiciable claim because it imposes an immediate obligation on GTE to sell network elements at predetermined rates.

established in the February 25 order against GTE. The challenged order was the product *not* of § 252 proceedings, but of proceedings initiated by the MPSC under Michigan law, and as such may be independently enforced by the Michigan courts. The district court therefore erred in concluding that § 252(e)(6) provides an adequate opportunity for deferred review under either *Califano* or *Thunder Basin*.

It is presumably because § 252(e)(6) does not provide GTE with an adequate assurance of federal review that the MPSC does not seriously defend on appeal the district court's conclusion that §252(e)(6) satisfies *Thunder Basin* because it defers, but does not preclude, federal review. Rather, the MPSC argues that "there is neither a need nor a requirement for the federal District Court to review [the February 25 order]" because that order is fully reviewable in Michigan state court. Although this argument may be relevant to the question whether the district court should abstain from deciding GTE's claims at this time, *see Romine v. CompuServe Corp.*, 160 F.3d 337, 340–41 (6th Cir. 1998), it is wholly irrelevant to the question whether the court has jurisdiction to hear GTE's federal preemption challenges to a state commission order entered in a non-FTA proceeding.

In upholding jurisdiction over GTE's claims under § 1331, we emphasize that it is precisely because state utility commissions play such a critical role in administering the FTA's regulatory framework that they must operate strictly within the confines of the statute. We therefore REVERSE the district court's ruling, uphold its jurisdiction under § 1331, and remand the case for determination on the merits if and when the district court finds GTE's claims ripe for review.[7] In so doing, we hope to further the goals of the FTA

---

[7]To determine whether a claim is ripe for decision, the reviewing court must consider both the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). A case is "fit for judicial decision" where the issues raised are purely legal ones and

challenged directive was merely an interlocutory order. *See* 42 U.S.C. § 252(e)(6) (1996). GTE timely appealed the district court's decision to this court.

Based on the language and legislative history of § 252(e)(6), we conclude that the limitations on federal review set forth in that provision do not apply in this case, and that the district court has general federal question jurisdiction under 28 U.S.C. § 1331 to hear GTE's challenge to the February order.

## I

Before addressing the basis for the district court's jurisdiction over GTE's claims, it is necessary briefly to describe the administrative context in which the MPSC issued the challenged order. In the spring of 1996, AT&T and Sprint attempted to negotiate an interconnection agreement with GTE pursuant to § 251 of the FTA. Congress passed the Act in 1996 in an effort to promote competition in local telephone markets by ending regulated monopolies previously enjoyed by incumbent local exchange carriers (LECs) such as GTE. Before Congress enacted the FTA, state public utility commissions regulated local telecommunications markets by granting companies that incurred the expense of establishing local networks the exclusive right to provide service in the areas covered by their systems. In exchange for this privilege, LECs allowed the state commissions to regulate local service rates. The FTA altered this practice and addressed the underlying problem of anti-competitive local telecommunications markets in two ways: it preempted state commissions' authority to grant service monopolies, and obligated incumbent LECs to provide competitors with network access.

Although the FTA circumscribes state commissions' power to regulate local markets, it does not exclude state commissions from the FTA approval process. To the contrary, it invests them with authority to approve or reject interconnection agreements negotiated in accordance with the Act, which requires LECs to permit rival carriers to: (1)

utilize the LEC's network and facilities; (2) purchase unbundled network elements from the LEC; and (3) purchase at wholesale rates any telecommunications service that the LEC provides at retail to subscribers who are not telecommunications carriers. *See* 47 U.S.C. §251(c)(2)-(4) (1996); *see also id*. § 252 (establishing procedures for negotiation, arbitration, and approval of interconnection agreements). To facilitate new competitors' entry into local markets, the FTA outlines specific procedures that LECs and new market entrants must follow in negotiating, arbitrating, and approving interconnection agreements. *See generally id.* §252 (1996). LECs and their competitors may negotiate interconnection agreements voluntarily, through mediation, or through compulsory arbitration before a state utility commission. *See id.* § 252(a)-(b) (1996). When a final agreement is reached, the telecommunications or public utility commission for the state in which the LEC is located must approve or reject the agreement. *See id.* § 252(e) (1996).

Once a state commission rules on a proposed agreement, Section 252(e)(6), the FTA provision at issue in this case, authorizes any aggrieved party to "bring an action in an appropriate Federal district court to determine whether the agreement . . . meets the requirements of section 251." *Id.* § 252(e)(6) (1996). If a state commission fails to approve or reject a proposed agreement within a certain time – 30 days from the date of submission if the agreement resulted from compulsory arbitration, or 90 days from the date submitted if the agreement resulted from voluntary negotiation or mediation – the Federal Communications Commission (FCC) may preempt the state commission's jurisdiction and rule on the validity of the agreement. *See id.* § 252(e)(4) - (5) (1996).

In this case, AT&T and Sprint petitioned the MPSC for compulsory arbitration under § 252 when the negotiations they began with GTE in 1996 did not produce an agreement. In March 1997, before a final agreement was reached, GTE filed a complaint in federal district court alleging that an order issued by the MPSC on January 15, 1997, concerning GTE's interconnection obligations to Sprint and AT&T violated the

to prospective injunctive relief, waiting to decide this case until the Commission approves a final agreement incorporating the challenged terms may well deny GTE a timely and adequate remedy by precluding recovery for harm sustained while the order was in effect.[6]

For the foregoing reasons, abstention is not warranted in this case.

## IV

In holding that GTE's claims fell within the purview of § 252(e)(6), the district court effectively denied GTE any assurance of federal review because under § 252(e)(6), federal review is wholly contingent on a state commission's decision to approve or reject a final interconnection agreement incorporating the terms of any challenged order, an event that need not occur for a competitor to enforce the tariffs

---

[6]GTE was prudent to sue the Michigan commissioners under *Ex parte Young* because it is virtually certain that a state utility commission's decision to accept regulatory authority under the FTA cannot legitimately be construed as a valid waiver of sovereign immunity. The Supreme Court's recent decisions in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.*, 119 S. Ct. 2199, and *Florida Prepaid Postsecondary Education Expense Bd. v. College Savings Bank*, 119 S. Ct. 2219 (1999), undermine earlier circuit court decisions holding that the Eleventh Amendment does not bar suits against state utility commissions because such commissions constructively waive their immunity from suit by participating in the regulatory scheme established by the FTA. *See, e.g.*, *MCI Telecommunications Corp. v. Illinois Commerce Comm'n*, 183 F.3d 567, 567-68 (7th Cir. 1999) (granting a petition for rehearing and directing the parties to file supplemental briefs on the impact that the Supreme Court's decisions in *Alden v. Maine*, 119 S. Ct. 2240 (1999), and the *College Savings Bank* cases had on the court's earlier decision).

It is precisely because the waiver doctrine no longer provides a reliable basis for seeking relief against state commissions that we disagreed in *Michigan Bell Telephone Co. v. Climax Telephone Co.*, 202 F.3d 862 (6th Cir. 2000), with the Seventh Circuit's decision in *MCI* and premised our conclusion that the plaintiff could proceed with its suit against the MPSC solely on *Ex parte Young*, rather than waiver, grounds.

the rule that only exceptional circumstances justify [abstention]"). Because the MPSC's February order cannot be described as "judicial" in nature, *Younger* does not require this court to abstain from ruling on the merits of GTE's claims. *See id.* at 371 (holding that a "judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist," and concluding that the "establishment of a rate is the making of a rule for the future, and therefore is an act legislative and not judicial in kind"). Indeed, *Younger* abstention would be especially inappropriate in this case because the Michigan Court of Appeals has already considered and rejected the merits of GTE's challenge to the MPSC's 1997 orders. *See GTE North, Inc. v. MPSC*, No. 198324 (unpublished opinion, December 30, 1997) (affirming over GTE's objection the rates established in the MPSC's order in case U-10860 and affirming the MPSC's directive to conduct the cost study proceedings that gave rise to the dispute in this case).

Finally, the district court is not required to abstain from deciding this case under the Johnson Act, which prohibits federal courts from enjoining compliance with state orders affecting rates charged by a public utility only when, among other things, "[j]urisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution." 28 U.S.C. § 1342 (1994). The Johnson Act does not require abstention in this case because jurisdiction over GTE's claims is based on alleged violations of its rights under the FTA.

In addition to the fact that the requirements for abstention established by the Supreme Court are not satisfied in this case, abstention is not warranted here because waiting to review the propriety of the February 25 order until it is incorporated into a final arbitration agreement will deny GTE a timely and adequate remedy at law. GTE, whose suit against the MPSC is based on *Ex parte Young*, 209 U.S. 123 (1908), cannot recover damages for injuries sustained under the challenged order. Because *Young* limits GTE's recovery

FTA. The district court dismissed GTE's complaint, holding that it did not have subject matter jurisdiction to review the challenged order because it was not an order approving or rejecting a final interconnection agreement. *See GTE North v. Strand*, No. 5:97-CV-20 (W.D. Mich. June 2, 1997) (citing 47 U.S.C. § 252(e)(6)).

Then, while arbitration proceedings between GTE, Sprint, and AT&T were still pending, the MPSC initiated unrelated state law proceedings against GTE and other incumbent LECs in order to establish terms of interconnection to Michigan local exchange networks generally. These proceedings concerned GTE as an LEC, but not specifically as a party to the AT&T and Sprint arbitration. In connection with these general interconnection proceedings, the MPSC required GTE and Ameritech, as Michigan LECs, to file with the Commission "Total Service Long Run Incremental Cost" (TSLRIC) studies for both regulated and non-regulated telecommunications services. In addition, the MPSC directed GTE to publish tariffs in which GTE would offer to sell its network elements and wholesale services to any interested party at rates predetermined by the Commission. GTE responded to the Commission's order by filing a petition for rehearing in which GTE challenged the MPSC's rates for unbundled loops as confiscatory in violation of the FTA. The MPSC denied GTE's petition for rehearing, and GTE appealed the MPSC's order to the Michigan Court of Appeals. On December 30, 1997, the court affirmed the MSPC's order, and the MPSC proceeded to use GTE's and Ameritech's TSLRIC studies to determine prices for new entrants' access to bundled and unbundled network elements and basic local exchange services throughout Michigan.

On February 25, 1998, in the course of the state proceedings against GTE and Ameritech, the MPSC issued the order contested in this appeal. In the February 25 order, the MPSC used GTE's TSLRIC studies to establish the rates at which GTE would be compelled to sell unbundled network elements to its competitors. In addition, the order stated that the FTA requirement that GTE allow competitors to access

pieces, or unbundled elements, of GTE's local network did not preclude GTE's competitors from requesting access to pre-assembled, fully operational local service platforms. Upon receiving the order, GTE sued the MPSC in the district court, alleging that the Commission, acting pursuant to Michigan law, violated the FTA when it issued the February 25 order: (1) directing GTE to provide competitors with access to pre-assembled, fully operational service platforms; and (2) requiring GTE to publish tariffs offering to sell elements of its network at rates predetermined by the Commission.

In its motion for summary judgment, GTE argued that the Commission's mandate directing GTE to provide competitors with access to pre-assembled network platforms violated § 251(c)(3) of the FTA because that provision requires LECs to provide competitors with access only to "*unbundled* network elements." 47 U.S.C. § 251(c)(3) (1996) (emphasis added). According to GTE, Congress deliberately limited incumbent LECs' obligation to grant competitors network access by requiring LECs to provide competitors only with "unbundled," or separated, network elements that the new carrier would have to assemble before it could provide service. *Ibid.* In addition, GTE argued that the portion of the February order directing it to offer pre-assembled platforms to all potential competitors violated the FTA because the Act specifically states that only competitors who *request* unbundled access ("requesting carriers") are entitled to network access under § 251(c)(3), and then only after negotiating individual interconnection agreements. *See ibid.* GTE made a similar argument in challenging the MPSC's second directive, which, according to GTE, violates the FTA because it requires LECs to publish tariffs offering to sell network elements to *all* interested competitors at predetermined rates even though §§ 251 and 252 of the Act

*Pullman* abstention is similarly inappropriate because *Pullman* abstention is warranted only when a state law is challenged and resolution by the state of certain questions of state law may obviate the federal claims, or when the challenged law is susceptible of a construction by state courts that would eliminate the need to reach the federal question. *See, e.g.*, *Babbit v. United Farm Workers National Union*, 442 U.S. 289, 306 (1979) (interpreting *Pullman*). In this case, to abstain pending state review of GTE's claims would be inappropriate because the dictates of the Michigan Telecommunications Act (pursuant to which the MPSC issued the challenged order) are clear and the MPSC has already considered GTE's objections to the February 25 order, denied them, and denied GTE's request for rehearing.

*Younger* abstention is also inappropriate. In *Younger*, the Supreme Court held that federal courts should abstain from deciding cases within their jurisdiction only when: (1) there are ongoing state court proceedings; (2) those proceedings involve important state interests; and (3) the parties have an adequate opportunity to raise constitutional issues in the state proceedings. *See GTE MobileNet of Ohio v. Johnson*, 111 F.3d 469, 481 (6th Cir. 1997). The MPSC contends that all three conditions for *Younger* abstention are met, and emphasizes that state proceedings *are* currently ongoing despite the Michigan courts' rejection of GTE's claims because GTE has a right pursuant to Mich. Comp. Laws § 462.26 to seek review of the Commission's February 25 order (and the Commission's May 11, 1998, order denying rehearing) in the Michigan Court of Appeals.

That GTE has a right to appeal does not, however, satisfy the requirement that a federal court may abstain under *Younger* only if the parties are involved in ongoing state proceedings. The Supreme Court held in *NOPSI* that the availability, or even the pendency, of state court review of a "legislative or executive action" does not justify *Younger* abstention. *NOPSI*, 491 U.S. at 368 (noting that requiring abstention in deference to state judicial proceedings reviewing "legislative or executive action" would "make a mockery of

express an opinion on the merits of GTE's claims, but not on the grounds urged by the defendants. Although the Michigan courts have concurrent jurisdiction over GTE's § 1983 and preemption claims, we should decline to decide this case only if the requirements for abstention established in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), *Younger v. Harris*, 401 U.S. 37 (1971), or *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941), are met, or if abstention is warranted under the Johnson Act, 28 U.S.C. § 1342 (1994).

*Burford* abstention is appropriate where "timely and adequate state-court review is available" and:

> (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or
> (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (*NOPSI*). Although the MPSC was arguably trying to establish a "coherent policy" concerning local interconnection rates, Michigan state law clearly authorizes the dictates in the Commission's February 25 order. Because Congress has invested the federal courts with primary responsibility for adjudicating FTA challenges to state telecommunications regulations, and because this case does not concern a disputed issue of state law, but rather a potential conflict between state and federal telecommunications laws, *Burford* abstention is inappropriate. *See, e.g.*, *NOPSI*, 491 U.S. at 361 (holding *Burford* abstention inappropriate because the plaintiffs' case did not "involve a state-law claim, nor even an assertion that the federal claims are in any way entangled in a skein of state law that must be untangled before the federal case can proceed") (internal quotation marks and citation omitted).

specifically require competitors to negotiate individual terms of access with LECs.[1] *See* 47 U.S.C. § 252(c)(2)-(3) (1996).

Although GTE's claims raise interesting questions about the scope and applicability of certain provisions of the FTA, the district court did not address these arguments on the merits because it determined that it lacked jurisdiction under § 252(e)(6) to review the MPSC's February 25 order. In its July 1998 ruling, the court dismissed GTE's claims for declaratory and injunctive relief on the basis that § 252(e)(6) precludes federal review where a state commission has not yet issued a final order approving or rejecting an interconnection agreement. GTE argues on appeal that the district court erred in dismissing the case for lack of subject matter jurisdiction because the district court had general jurisdiction under 28 U.S.C. § 1331 to hear GTE's claims. In deciding this appeal, we express no opinion on the merits of GTE's claims and determine only whether the district court has jurisdiction to entertain GTE's challenge to the February 25 order.

---

[1] Although GTE claims that it will be disadvantaged if its competitors are not required to negotiate individual terms of network access, any harm GTE may suffer on this score will arguably be temporary because universal subsidies are due to be phased out under the FTA. *Cf. AT&T Corp. v. Iowa Utilities Bd.*, 119 S. Ct. 721, 737 (1999) (upholding an FCC rule that the plaintiffs said would "eviscerate the distinction between resale and unbundled access" and amount to "government-sanctioned arbitrage" on the grounds that the rule was consistent with the FTA, and noting that, because "§ 254 requires that universal service subsidies be phased out, . . . whatever possibility of arbitrage remains will be only temporary").

The counter-argument is, of course, that even if the tariffing requirement established in the February 25 order were struck down once the Commission approved an agreement incorporating the terms set forth in the tariffs, GTE could not recover damages for harm suffered in the interim, nor could it "turn back the clock and recreate the atmosphere of negotiations that would have prevailed if [its competitors] had not been operating for months under tariffing arrangements." Appellant's Br. at 24-25.

## II

This court reviews *de novo* the district court's denial of GTE's motion for summary judgment. *See Greene v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996). We also review *de novo* the district court's decision to dismiss GTE's complaint for lack of subject matter jurisdiction. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 252 (1986); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). Lack of subject matter jurisdiction is an affirmative defense that a defendant may assert in a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(1); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasizing that to survive a motion to dismiss, a complaint must contain "either direct or indirect allegations respecting all material elements to sustain a recovery under some viable legal theory").

The party opposing dismissal has the burden of proving subject matter jurisdiction. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Specifically, the non-moving party must show that the complaint "alleges a claim under federal law, and that the claim is 'substantial.'" *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996) (holding that a complaint is "substantial" unless "prior decisions inescapably render [it] frivolous"). That is to say, the non-moving party will survive the motion to dismiss by showing "any arguable basis in law" for the claims set forth in the complaint. *Ibid.* In conducting our review, we "construe the complaint in a light most favorable to the plaintiff, accept as true all of plaintiff's well-pleaded factual allegations, and determine whether the plaintiff can prove no set of facts supporting [his] claims that would entitle him to relief." *Ludwig v. Board of Trustees of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir. 1997). We review for clear error any factual findings the district court made in deciding the motion to dismiss. *See Gafford v. General Elec. Co.*, 997 F.2d 150, 161 (6th Cir. 1993).

Court in *AT&T Corp. v. Iowa Utilities Bd.*, 119 S. Ct. 721 (1999).[5]

## III

The MPSC argues that, even if we have jurisdiction over GTE's claims, it would be prudent for us to abstain from ruling on the merits of the case until the rates specified in the February 25 order are incorporated into an interconnection agreement approved by the Commission. We decline to

[5] In *Iowa*, the Supreme Court reversed the Eighth Circuit's decision vacating, as inconsistent with the private negotiation provisions of the FTA, the FCC's "pick-and-choose" rule, which required incumbents to offer network access to any potential competitor on the same terms enjoyed by earlier competitors who negotiated individual agreements with the incumbent. The Eighth Circuit vacated the rule on the basis that it allowed late market entrants to obtain the benefits of previous competitors' agreements without having to accept the trade-offs that the initial competitors had to make in order to obtain favorable terms of access. *See id.* at 738. In reversing the Eighth Circuit and upholding the rule, the Supreme Court rejected the argument that the rule undercut incumbents' bargaining power and contravened the purpose of the negotiation provisions of the FTA, and affirmed the FCC's authority to promulgate the rule on the basis that it tracked the language of a particular FTA provision (§ 252(i)) "almost exactly."

In the same opinion, the Supreme Court also reversed the Eighth Circuit's decision vacating FCC Rule 315(b), which prohibits incumbent LECs from separating already combined network elements before leasing them to competitors under the "unbundled access" provisions of the FTA. The Eighth Circuit determined that the rule should be vacated because it required leased access to "bundled" elements, in violation of the FTA. The Supreme Court disagreed, finding that, although § 251(c)(3) directs incumbents to grant competitors access to "unbundled" elements that the competitors may then "combine" and thus "forbid[s] incumbents to sabotage network elements that are provided in discrete pieces," § 251(c)(3) "does not say, or even remotely imply, that elements must be provided only in this fashion and never in combined form." *Iowa*, 119 S. Ct. at 737. Noting that "§ 251(c)(3) is ambiguous on whether leased network elements may or must be separated," the Court concluded that the FCC's rule, which effectively requires incumbents to lease "bundled" elements to competitors under certain circumstances, "is entirely rational" even though the rule "could allow entrants access to an entire preassembled network." *Id.* at 737–38.

preemption challenges to state commission orders issued in non-FTA proceedings.

Indeed, to hold to the contrary would have enormous negative implications: if only certain actions (final orders approving interconnection agreements) by state commissions are reviewable in federal court, and if, as the district court held, § 252(e)(6) is the exclusive basis for judicial review of state commission actions that in any way relate to interconnection agreements, state commissions may insulate regulatory requirements that violate the FTA from federal, and possibly even state, court review. This interpretation of § 252(e)(6) conflicts with Congress's decision to establish federal procedures for negotiating interconnection rights and to concentrate judicial review of interconnection agreements in the federal courts. It is also antithetical to the principle that parties injured by a governmental entity's failure to adhere to the law may seek redress in the courts. Finally, denying review and forcing GTE either to violate the February 25 order, or to comply with the general and immediate obligations imposed by the order in the hope that the order would one day be incorporated into a reviewable final agreement, would undermine both the letter and spirit of the FTA.

Section 252(e)(6) circumscribes federal review only of cases born of § 252 proceedings. Because the MPSC's February 25 order was not the product of § 252 arbitration, but of an independent state law proceeding, § 252(e)(6) does not preclude jurisdiction over GTE's claims. We therefore hold that federal review is available under § 1331 to determine whether state commission orders violate federal law except in cases in which the challenged regulatory action is clearly an interlocutory order arising out of § 252 proceedings. We confine our holding to the jurisdictional question because it is for the district court to determine on remand whether the directives in the February 25 order violate § 252 of the FTA as recently interpreted by the Supreme

### *Jurisdiction Over the Challenged Order*

Based on the scope of the applicable statutory provisions and the nature of the challenged order, we conclude that the district court has general jurisdiction pursuant to 28 U.S.C. § 1331 to hear GTE's claims. Section 252(e)(6), which prohibits federal review of interlocutory orders entered in the course of FTA proceedings, plainly does not preclude review of the February 25 order, which was entered in an independent state law proceeding unrelated to the AT&T–Sprint arbitration. Moreover, even if one could interpret § 252(e)(6) to encompass GTE's claims, to do so would frustrate Congress's intent by allowing state commissions to insulate from federal review decisions allegedly preempted by, or otherwise contrary to, federal telecommunications law. We therefore reverse the district court's order dismissing GTE's complaint, but express no opinion on whether the order directing GTE to sell pre-assembled platforms and other network elements at predetermined rates is preempted by the FTA.[2] We similarly express no opinion on whether the portion of the February 25 order directing GTE to sell network elements to any interested competitor at rates predetermined by the Commission is preempted by the FTA requirement that competitors obtain access to local networks by negotiating individual interconnection agreements.[3]

---

[2] Section 261 of the FTA provides that state commissions can impose their own rules "in fulfilling requirements of this part, if such regulations are not inconsistent with the provisions of [the FTA]." 47 U.S.C. § 261 (1996). State commissions may also impose additional requirements on LECs if such requirements "are necessary to further competition in the provision of telephone exchange access, so long as the State's requirements are not inconsistent with the [Federal Communication] Commission's regulations to implement this part." *Id.* § 261 (b)-(c).

[3] *See* 47 U.S.C. §§ 251(a)(1), 251(c)(1) (requiring incumbents and their competitors to negotiate in good faith the specific terms and conditions of interconnection agreements).

To survive a motion to dismiss based on lack of federal question jurisdiction, the non-moving party must show first that its claims arise under federal law and, second, that § 1331 jurisdiction is not "preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere." *Connors v. Amax Coal Co.*, 858 F.2d 1226, 1229-30 (7th Cir. 1988). GTE asserts that the district court has subject matter jurisdiction over its 42 U.S.C. § 1983 and federal preemption claims because: (1) such claims arise under the Constitution and laws of the United States; and (2) the MPSC's February 25 order, which the parties agree was issued pursuant to Michigan law, deprives GTE of its rights under the FTA, thereby creating a cause of action for prospective injunctive relief against the commissioners under 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908). We agree.

Because GTE's claims arise under federal law, the district court has jurisdiction under § 1331 to decide the case unless GTE's claims are subject to the limitations on federal review set forth in § 252(e)(6), which we conclude they are not. *See* 47 U.S.C. § 252(e)(6) (1996); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (holding that a plaintiff who "seeks injunctive relief from a state [or local] regulation on the ground that such regulation is preempted by federal law . . . presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve"). Federal question jurisdiction over GTE's claims is not preempted by the FTA because § 252(e)(6) only circumscribes federal judicial review of interlocutory orders issued in FTA, not state law, proceedings. *See Connors*, 858 F.2d at 1229–30.

The text and legislative history of the FTA make clear that § 252(e)(6) is the exclusive basis for federal judicial review only of orders entered in negotiation or arbitration proceedings under § 252 of the Act. Section 252(e)(6) provides that, "[i]n any case in which a State commission makes a determination *under this section*, any party aggrieved by such determination may bring an action in an appropriate federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title

state courts to defer to the MPSC]." *Id.* at 654. Because an interested buyer need not incorporate the terms of the February 25 order into a final arbitration agreement to enforce GTE's obligations under the order, § 252(e)(6) does not provide an "adequate procedure" by which GTE may obtain review of the MPSC's directives. That GTE could contest the validity of the February 25 order in the course of defending a state court enforcement proceeding does not solve the problem, because leaving resolution of GTE's claims to the state courts would clearly frustrate Congress's goals under the FTA. *See, e.g.*, *MFS Intelenet*, 16 F. Supp. 2d. at 823–34 (concluding that review of § 252 "as a whole" demonstrates that "Congress has created a unique framework which, while inviting state commissions to arbitrate and approve interconnection agreements, retains exclusive jurisdiction within the federal courts to ensure that those agreements meet federal requirements").

The district court has subject matter jurisdiction under § 1331 to review federal preemption claims. *See Bibbo v. Dean Witter Reynolds, Inc.,* 151 F.3d 559 (6th Cir. 1998). The question in this case is simply whether § 252(e)(6) *divests* the district court of its jurisdiction over GTE's preemption claims because the February 25 order, though itself a product of state law proceedings, establishes rates that might one day be incorporated into final arbitration agreements approved by the MPSC. There is no evidence that Congress intended § 252(e)(6), which grants federal courts exclusive jurisdiction to review for FTA compliance state commission orders approving or rejecting interconnection agreements, to preclude federal review of state law orders that permit telecommunications carriers to circumvent the procedures prescribed in the FTA for negotiating network access. We recognize, of course, that the significance of the challenged order's state law origins has engendered legitimate debate among the parties and in the district court. However, absent clear evidence that Congress intended to allow state commissions to issue orders that may be enforced without being incorporated into final interconnection agreements, we will not construe § 252(e)(6) to preclude federal review of

agreement was so strong as to eliminate the contingency and virtually guarantee judicial review.

We disagree, and find that in this case § 252(e)(6) cannot be relied upon to provide adequate federal review because there is a chance, regardless how small, that GTE's competitors may obtain service from GTE on the terms set forth in the February 25 order *without ever executing* a final agreement. Indeed, we think the appropriate inquiry is not whether, in the court's estimation, it is more likely than not that the challenged order will be incorporated into a reviewable agreement, but whether there is any possibility at all that an LEC's competitors could enforce the terms of the challenged order by means other than those prescribed in the FTA. If there is such a chance, § 252(e)(6) does not provide the party challenging the order with adequate review under *Califano*, and the federal district courts have general jurisdiction to review the order under 28 U.S.C. § 1331.

Under Michigan law, a buyer interested in purchasing network elements from GTE at the rates established in the February order need not execute a final interconnection agreement with GTE to enforce the tariff; it need only petition a state court for an injunction enforcing the terms of the tariff against GTE. *See, e.g.*, *Rinaldo's Construction Corp. v. Michigan Bell Telephone Co.*, 559 N.W.2d 647, 653–54 (Mich. 1997). In *Rinaldo's*, the Michigan Supreme Court held:

> [W]here a plaintiff seeks relief against a telephone company in a [state] court of general jurisdiction, under *Valentine [v. Michigan Bell*, 199 N.W.2d 182 (Mich. 1972)], the court may entertain (1) a cause of action in tort, or (2) *a claim that the telephone company has violated the regulatory code or tariffs*.

*Id.* at 653–54 (emphasis added). As the Michigan Supreme Court went on to explain, "[c]auses of action in tort and those causes of action alleging that a telephone company has violated the tariffs or code are not cases in which the rationale underlying the doctrine of primary jurisdiction [requires the

and this section." 47 U.S.C. § 252(e)(6) (1996) (emphasis added). Because the MPSC initiated the state law proceedings that resulted in the challenged order independent of the procedures prescribed in the FTA, § 252(e)(6) does not limit federal judicial review of the February 25 order, and the MPSC's failure, thus far, to incorporate the terms of the order in a final decision approving or rejecting an interconnection agreement does not bar review of GTE's claims.

In holding that GTE's suit was premature because the MPSC had yet to issue a final order reviewable under § 252(e)(6), the district court relied heavily on its prior decision in *GTE North v. Strand*, No. 5:97CV01, 1997 WL 811422 (W.D. Mich.),[4] and in so doing failed to recognize the legal significance of the February 25 order's state law origins. As the district court implicitly acknowledged in *Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.*, 16 F. Supp. 2d 817, 823 (W.D. Mich. 1998), *Strand* stands for the limited proposition that federal district courts have "no jurisdiction to review MPSC decisions arising *during the § 252 process* until after [an] interconnection agreement ha[s] become final by way of commission approval or rejection." *Ibid.* (citing cases) (emphasis added). The court in *MFS* thus distinguished *Strand* and upheld jurisdiction over the plaintiff's challenge to an MPSC order interpreting (rather than approving or rejecting) an existing interconnection agreement. *See id.* at 823-24; *cf. Michigan Bell Telephone v. Strand*, 26 F. Supp. 2d 993, 999 (W.D. Mich. 1998) (emphasizing the "Congressionally assigned role of the district courts in preventing violations of the Telecommunications Act flowing from enforcement decisions or other decisions inconsistent with existing interconnection agreements"). In this case, as in *MFS*, the challenged order did not arise "during the § 252 process," and is therefore not

---

[4]In *Strand*, the district court noted that an MPSC order is a "determination" subject to federal review under section 252(e)(6) only if the order approves or rejects a final interconnection agreement. *See Strand*, 1997 WL 811422, at *2 (quoting *GTE South v. Morrison*, 957 F. Supp. 800, 804 (E.D. Va. 1997)).

subject to the reasoning in *Strand* or the many other cases cited by the lower court in which district judges have refused to review interlocutory orders issued by state commissions in the course of § 252 arbitrations. *Id.* at 823.

Although the order at issue in this case is clearly distinguishable from an interlocutory order entered in a § 252 proceeding, the commissioners urge us to overlook the order's state law origins because the order establishes rates that the parties agree will likely be incorporated in a final agreement subject to review under § 252(e)(6). Were we to adopt this approach, we would simply equate the February 25 order with an interlocutory order in a § 252 proceeding that GTE could not challenge in federal court until the Commission issued a final decision approving or rejecting an agreement incorporating the terms of the order. Recharacterizing the February 25 order in this manner appears consistent with the FTA if one reads § 252(e)(6) broadly to govern not only claims that a state utility commission erred in approving a final agreement negotiated under § 252, but also claims that the commission violated the FTA by approving an agreement that was not the product of a § 252 proceeding. Although this construction of § 252(e)(6) is superficially appealing, we cannot adopt this approach and assume that GTE would eventually be able to seek federal review of the challenged order because any approach that equates a decision arising out of independent state law proceedings with an interlocutory order in a § 252 arbitration ignores the critical fact that the former may be enforced against the parties even if it is *never* incorporated in a final interconnection agreement.

At first blush, § 252(e)(6) seems to guarantee adequate, albeit deferred, judicial review of the Commission's February 25 order. *See, e.g.*, *Thunder Basin Coal v. Reich*, 510 U.S. 200 (1994) (holding that a statutory provision that places temporal restrictions on a party's ability to bring an action in federal court still provides adequate opportunity for review and therefore satisfies due process). As the district court noted in its opinion, the parties agree that the rates established in the Commission's February 25 order will likely

be incorporated into a final arbitration agreement. Standing alone, this admission appears to undercut GTE's argument that the district court has jurisdiction over its claims under § 1331. Indeed, when combined with the Commission's assertion that it has been prevented from ruling on an agreement incorporating the challenged terms because GTE has not made certain filings, the parties' admission virtually guarantees that, if GTE were to execute an agreement, either the MPSC or the FCC would approve or reject the terms of the challenged order, at which point GTE could seek federal review under § 252(e)(6). *See* 47 U.S.C. § 252(e)(1) (1996) (stating that a state commission "shall" approve or reject "any" interconnection agreement between an incumbent and a requesting carrier, whether the agreement is the product of voluntary negotiation or binding arbitration before the state commission). The problem with this logic, and the reason § 252(e)(6) does not provide for adequate review of the challenged order under *Califano v. Sanders*, 430 U.S. 99, 108 (1977), or even under *Thunder Basin*, 510 U.S. 200 (1994), is that an interested buyer could enforce the tariffs established in the February order in the Michigan courts without ever executing a final interconnection agreement with GTE.

In determining whether the lower court has jurisdiction over GTE's claims despite the limitations in § 252(e)(6), this court must look "not only [to] the particular statutory language, but to the design of the [FTA] as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158 (1990). Citing the Supreme Court's decision in *Califano*, the district court correctly observed that, "[w]here Congress has provided an adequate procedure to obtain review of an agency determination, alternative bases for jurisdiction are inapplicable." *Califano*, 430 U.S. at 108. The district court noted in its opinion that confining federal review of GTE's claims to the circumstances outlined in § 252(e)(6) might theoretically deprive GTE of "adequate" review under *Califano* because such review would be contingent upon the MPSC's approval of a final agreement incorporating the February 25 order. However, the court found that the probability that the order would be incorporated into a final