## MCI TELECOMMUNICATIONS CORPORATION, et al., Plaintiffs,

## v.

## SPRINT–FLORIDA, INCORPORATED, et al., Defendants.

### No. 4:97CV231–RH.

United States District Court, N.D. Florida, Tallahassee Division.

March 29, 2001.

Richard Dent Melson, Carolyn Songer Raepple, Hoppig Green Sams & Smith,

---

Tallahassee, FL, Matthew Pachman, MCI Communications Corp., Washington, DC, for plaintiffs.

Richard Dent Melson, Carolyn Songer Raepple, Hoppig Green Sams & Smith, Tallahassee, FL, for MCIMetro Access Transmission Services, Inc.

John Philip Fons, John Jeffry Wahlen, MacFarlane Ausley Ferguson McMullen, Tallahassee, FL, David P. Murray, A. Renee Callahan, Willkie Farr & Gallagher, Washington, DC, for Sprint-Florida Inc.

John Philip Fons, John Jeffry Wahlen, MacFarlane Ausley Ferguson McMullen, Tallahassee, FL, David E. Smith, Public Service Com'n, Tallahassee, FL, for Florida Public Service Com'n, Susan F. Clark, J. Terry Deason, Joe Garcia, Julia L. Johnson, Diane K. Kiesling.

David E. Smith, Public Service Com'n, Tallahassee, FL, for E. Leon Jacobs, Jr.

## ORDER ON MERITS

HINKLE, District Judge.

This is another in a series of challenges under the Telecommunications Act of 1996, 47 U.S.C. §§ 251–52, to decisions of the Florida Public Service Commission with respect to the terms and conditions under which an incumbent local exchange carrier must provide services and make facilities and network elements available to a competitor. I hold that voice mail is not a "telecommunications service" that an incumbent must make available to a competitor at wholesale rates for resale by the competitor to its own customers.

### Background—The Statutory Framework

Historically, local telephone service was provided in the United States on a monopoly basis by carriers regulated under state law by state public service commissions. Congress fundamentally changed that approach by enacting the Telecommunications Act of 1996. The Act imposes on local carriers, as a matter of federal law, various duties designed to foster competition. The Act allows state commissions the option of taking a major role in implementing the Act's requirements.

The federal duties imposed on each "incumbent local exchange carrier"—that is, on each carrier who previously provided local service on a monopoly basis—include the obligation to sell to any competing carrier at wholesale rates, for resale by the competing carrier to its customers, any "telecommunications service" that the incumbent provides to its own customers. *See* 47 U.S.C. § 251(c)(4)(A). Other duties, not at issue here, include the obligation to allow competitors to interconnect with the incumbent's facilities for the purpose of providing services to the competitor's own customers and the obligation to make certain "network elements"—parts of its telecommunications system—available to competing carriers for their use in providing service to their own customers. These duties are described in greater detail in *MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 112 F.Supp.2d 1286 (N.D.Fla.2000).

The Act also imposes on each incumbent the duty to negotiate in good faith with any requesting carrier on the terms and conditions of an agreement under which these various duties will be fulfilled. *See* 47 U.S.C. § 251(c)(1). The Act likewise imposes on requesting carriers the duty to negotiate in good faith. *Id.*

If the parties reach a negotiated agreement, it must be submitted to the state commission for approval. *See* 47 U.S.C. § 252(e)(1). If the parties fail to agree on all terms and conditions, any party to the negotiation may request binding arbitration before the state commission of "any open issues." 47 U.S.C. § 252(b)(1).[1]

---

1. If the state commission chooses not to act on either a negotiated agreement or request

The Act provides for judicial review of the commission's decisions in federal district court. *See* 47 U.S.C. § 252(e)(6). The case at bar is an action for judicial review under this provision.

### Background—The Case at Bar

Defendant Sprit Florida, Incorporated ("Sprint") is the incumbent local exchange carrier in parts of the State of Florida. Among its competitors are plaintiffs MCI Telecommunications Corporation and MCImetro Access Transmission Services, Incorporated, related entities that will be referred to collectively in this order as "MCI."[2]

In accordance with the Telecommunications Act of 1996, Sprint and MCI entered negotiations for an agreement under which MCI would purchase certain local exchange services from Sprint for resale, would interconnect with Sprint's facilities, would have access to Sprint's network elements. Sprint and MCI were unable to agree on all terms and conditions of an agreement and thus sought and obtained arbitration before the Florida Public Service Commission.

Following an evidentiary hearing, the Florida Commission issued a final arbitration order. Among other things, the Florida Commission determined that "voice mail," a service Sprint makes available to retail customers, is a "telecommunications service" within the meaning of the Telecommunications Act of 1996, and the Florida Commission therefore ordered Sprint to provide voice mail to MCI at wholesale rates for resale by MCI to its customers.[3]

MCI brought this action challenging the Florida Commission's decision in several respects. MCI named as defendants Sprint, the Florida Commission, and each of its Commissioners in his or her official capacity.[4] Sprint counterclaimed, raising

---

for arbitration, the Federal Communications Commission must assume the responsibilities of the state commission. *See* 47 U.S.C. § 252(e)(5).

**2.** Both Sprint and MCI also provide interexchange (that is, "long distance") services. Their interexchange operations are not at issue here.

**3.** Voice mail is a service that functions like an answering machine. When a call is placed to a Sprint customer who subscribes to Sprint's voice mail service, but is not answered by the customer, the caller hears a message prepared in advance by or on behalf of the customer, advising the caller of his or her ability to leave a message for the customer. Sprint makes a recording of each such message left by a caller. The customer has the ability to retrieve any such message (by placing a call to Sprint's voice mail service and listening to the recording), at the customer's convenience, and to store or delete the message as the customer sees fit. Sprint does not alter the caller's message in any way and adds no information other than the time and duration of the message.

**4.** An action for judicial review of a state commission's decision may proceed against the individual commissioners in their official capacities in accordance with *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and thus is not barred by the Eleventh Amendment. *See MCI Telecommunications Corp. v. BellSouth Telecommunications, Inc.*, 1997 WL 1133453 (N.D.Fla.1997). I dismiss this case as against the Florida Commission on the grounds that its presence in this case as a defendant is merely redundant to the presence of the Commissioners in their official capacities. *Cf. Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991) (approving dismissal of official capacity defendants whose presence was merely redundant to naming of institutional defendant). As a prudential matter, *cf. Ashwander v. TVA*, 297 U.S. 288, 341, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), I do not address the substantial issue of whether the Florida Commission has waived its Eleventh Amendment immunity from suit in federal court by choosing to conduct an arbitration and to render a determination explicitly subject to review in federal court. *Compare, e.g., MCI Telecomms. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323 (7th Cir.2000) (finding waiver), *with, e.g., GTE North, Inc. v. Strand*, 209 F.3d 909, 922 n. 6 (6th Cir.2000) (expressing skepticism toward waiver theory). This is, in any

additional issues. Among Sprint's contentions was that voice mail is not a "telecommunications service" and that the Florida Commission therefore erred by requiring Sprint to provide voice mail to MCI at wholesale rates. Sprint and MCI have settled all their disputes other than this voice mail issue.

The parties have agreed that this court's review should be conducted based solely on the record as compiled in the Florida Commission. The parties have submitted briefs and presented oral argument. This order constitutes the court's ruling on the merits.

### Standard of Review

The Telecommunications Act provides for actions such as the case at bar in a single sentence:

> In any case in which a State commission makes a determination under [the Act], any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of [the Act].

47 U.S.C. § 252(e)(6).[5] The Act does not further specify the standard of review to be applied in determining "whether the

agreement ... meets the requirements of" the Act.

■ For the reasons set forth at length in *MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.,* 112 F.Supp.2d 1286 (N.D.Fla.2000), a district court should review *de novo,* without deference to a state commission, issues regarding the meaning and import of the Telecommunications Act, and should review state commission determinations of how to implement the Act as so construed only under the arbitrary and capricious standard. Under this standard, review of the Florida Commission's interpretation of the term "telecommunications service" as used in the Telecommunications Act of 1996 is *de novo.*[6]

### Merits

■ The Telecommunications Act of 1996 requires incumbent carriers

> to offer for resale at wholesale rates any *telecommunications service* that the carrier provides at retail to subscribers who are not telecommunications carriers.

47 U.S.C. § 251(c)(4)(A) (emphasis added). Under the plain terms of this provision, Sprint must make voice mail available to MCI at wholesale rates if and only if voice

event, an issue now before the United States Supreme Court. *See Illinois Bell Telephone Co. v. Worldcom Technologies, Inc.,* 179 F.3d 566 (7th Cir.1999), *cert. granted sub. nom., Mathias v. WorldCom Technologies, Inc.,* — U.S. —, 121 S.Ct. 1224, 149 L.Ed.2d 135 (2001).

**5.** The "agreement" to which this provision applies is an interconnection agreement of the type here at issue. The "statement" to which this provision applies is a statement of a Bell operating company of generally available terms. *See* 47 U.S.C. § 252(f). No such statement is involved here.

**6.** The standard of review of state commission decisions is a separate issue from the level of deference due interpretive regulations or rulings of the Federal Communications Commis-

sion. In making the required *de novo* review of a state commission's interpretation of the Telecommunications Act, a district court properly affords *"Chevron* deference" to interpretive regulations or rulings of the Federal Communications Commission. *See, e.g., Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (requiring court to give "controlling weight" to interpretations of a federal statute by a federal agency charged by Congress with implementing the statute "unless they are arbitrary, capricious, or manifestly contrary to the statute"); *AT & T Corp. v. Iowa Utilities Bd.,* 525 U.S. 366, 384–87, 397, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999) (holding *Chevron* applicable to FCC interpretations of Telecommunications Act of 1996).

mail is a "telecommunications service" within the meaning of the Act.[7]

The Act defines "telecommunications service" as:

the offering of *telecommunications* for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used.

47 U.S.C. § 153(46) (emphasis added). The Act in turn defines "telecommunications" as:

the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received.

47 U.S.C. § 153(43).

As an original matter, one reasonably could argue either side of the issue of whether voice mail constitutes "telecommunications" as so defined. A voice mail message is transmitted between a caller and voice mail customer, that is, "between ... points specified by [a] user," as well as an additional point, the voice mail center, which also apparently constitutes a point specified by one or both users. The initial message heard by the caller presumably is information designated by the voice mail customer, and the message left by the caller for the voice mail customer is chosen in full by the caller; the messages thus apparently constitute "information of the user's choosing." And finally, the messages are transmitted "without change in the form or content of the information as sent and received," except that the messages are recorded for later delivery, and the time and duration of a message consti-

tute additional information that may be added.

A proper analysis of this issue, however, goes beyond merely parsing the language of the "telecommunications" definition. The Telecommunications Act of 1996 also recognizes another category of service commonly provided by carriers, denominated by the Act as "information service." The Act defines "information service" as:

the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications....

47 U.S.C. § 153(20). Voice mail clearly constitutes "information service" within this definition, because it is a capability offered by a carrier for acquiring, storing, retrieving and making available to a customer information transmitted by a caller via telecommunication.

The Federal Communications Commission has concluded that "telecommunications service" and "information service" as defined by the Telecommunications Act of 1996 are mutually exclusive categories. *See, e.g., Implementation of the Local Competition Provisions of the Telecommunications Act of 1996* (First Report and Order), 11 F.C.C.R. 15499, ¶ 581 n. 1416, 1996 WL 452885 (1996); *Implementation of the Telecommunications Act of 1996* (Second Report and Order), 13 F.C.C.R. 8061, ¶¶ 46 & 72 (February 19, 1998); *Application of BellSouth Corporation, for Provision of In–Region, Interlata Services,* 13 F.C.C.R. 20,599, ¶ 314, 1998 WL 712899 (October 13, 1998); Implementation of Sections 255 and 251(a)(2), 17 Communications Reg. (P & F) 837, ¶¶ 77–79, 1999 WL 770958 (Sept.29, 1999).[8] The

---

**7.** The Florida Commission invoked only the federal Telecommunications Act of 1996, not Florida law, as a basis for its ruling compelling Sprint to provide voice mail to MCI at wholesale rates. Neither MCI nor the Florida Commission has cited any authority under Florida law for imposing such a requirement.

Thus the only issue in the case at bar is the validity of the Florida Commission's interpretation of the Telecommunications Act in this respect.

**8.** *See also Federal–State Joint Board on Universal Service, Report to Congress,* 11 Commu-

FCC also has determined that voice mail is "information service," not "telecommunications service," within the meaning of the Act's definitions. *See, e.g., Application of BellSouth Corporation, for Provision of In–Region, Interlata Services,* 13 F.C.C.R. 20,599, ¶ 314, 1998 WL 712899 (October 13, 1998). I conclude that these are reasonable interpretations of the Act that therefore must be accepted by this court. *See, e.g., Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (requiring court to give "controlling weight" to interpretations of a federal statute by a federal agency charged by Congress with implementing the statute "unless they are arbitrary, capricious, or manifestly contrary to the statute"); *AT & T Corp. v. Iowa Utilities Bd.,* 525 U.S. 366, 384–87, 397, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999) (holding *Chevron* applicable to FCC interpretations of Telecommunications Act of 1996).

Both the relevant regulatory history and the purpose of the 1996 Act's mandatory resale provision support this result.

The relevant regulatory history is this. Prior to 1984, AT & T was the largest provider of telecommunications service in the United States, operating what was known as the "Bell" system. AT & T provided both interstate service and, through subsidiaries such as Florida's "Southern Bell Telephone Company," local service. AT & T's "Bell" subsidiaries provided local service in most of the nation's largest markets, always on a monopoly basis.

The government brought an antitrust action against AT & T, alleging misuse of the local service monopolies in other markets (including in the market for interexchange-that is, long distance-telephone service). In settlement of that action, AT & T agreed to divest its local service operations, spinning off seven separate regional Bell Operating Companies ("RBOCs"). The court order governing divestiture and imposing restrictions of the operations of the new RBOCs was the Modification of Final Judgment ("MFJ"). *See United States v. American Telephone and Telegraph Co.,* 552 F.Supp. 131 (D.D.C.1982), *aff'd sub nom., Maryland v. United States,* 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983).

The MFJ recognized two mutually exclusive categories of service: "basic service," which the RBOCs were allowed to provide, on the one hand, and "enhanced service," which the RBOCs were prohibited from providing, on the other. In general, it was thought that core local telephone service, denominated "basic service," was appropriately provided on a monopoly basis subject to regulation; this was the business of the RBOCs. "Enhanced service," however, was not so inextricably intertwined with basic service that it appropriately should be available only from the monopoly carrier; instead, "enhanced service" was sufficiently separate from basic local telephone service that competitors could enter the market for the enhanced service without facing the insurmountable entry barriers thought to preclude competition in the market for basic local telephone service. In order to preclude the RBOCs from abusing their monopoly power, they were prohibited from providing "enhanced service."

Under this approach, any given service was a service that either could be provided by the RBOC or could not; by definition, a service could not fall on both sides of the divide. Thus "basic service" and "enhanced service" were mutually exclusive

nications Reg. (P & F) 1312, ¶ 39, 1998 WL 166178 (April 10, 1998) (treating "telecommunications service" and "information service" as mutually exclusive categories).

categories. The FCC's regulatory approach preserved these separate, mutually exclusive categories, although, as time passed, restrictions on RBOC provision of enhanced service were reduced. The FCC also used these categories in its regulation of other local carriers.

The legislative history of the 1996 Act makes clear that Congress recognized these same mutually exclusive categories and, at least in general, sought to preserve them, now under the rubrics of "telecommunications service," on the one hand, and "information service," on the other. *See, e.g.,* H.R. Conf. Rep. No. 104–458, 1996 WL 46795 at 252–255 (1996) (adopting the House definition of "information service" which is "based on the definition used in the Modification of Final Judgment" and adopting the Senate definition of "telecommunications service"); S.Rep. No. 104–23, 1995 WL 142161 at 40–41 (1995) (defining the term "telecommunications service" and explaining that it "does not include information services, cable services, or 'wireless' cable services, but does include the transmission, without change in the form or content, of such services"); H.R.Rep. No. 104–204, 1995 WL 442504 at 323–324 (1995) (basing the definitions of "telecommunications" and "information service" on the definitions used in the MFJ). The FCC's conclusion that, under the Act, these are mutually exclusive categories

that track the FCC's preexisting distinction between basic and enhanced service thus is not only reasonable but compelling.

Prior to adoption of the 1996 Act, voice mail was treated as "enhanced service." *See* Amendment of Section 64.702 of the Commission's Rules and Regulations *(Third Computer Inquiry),* 104 F.C.C.2d 958, ¶¶ 307–317, 1986 WL 292006 (1986). The FCC has reasonably concluded that voice mail continues as "information service" under the Act. Indeed, the same considerations that made voice mail a service that appropriately could be made available for competition rather than being preserved for the monopoly RBOCs under the regime created by the MFJ also make it reasonable to exclude voice mail from the category of services that an incumbent must make available to a competitor at wholesale rates under the 1996 Act. Thus voice mail is not so inextricably intertwined with basic local service that it is part and parcel of the incumbent's offering, and, for the same reasons, the entry barriers to providing this service are not so high that competitors need the ability to buy the service from the incumbent at wholesale rates in order to compete.[9]

In sum, Congress reasonably could have intended that the extraordinary requirement imposed on incumbent's by the 1996 Act—that they sell their services to their

---

**9.** That Congress intended to exclude "information service" from the obligation of incumbents to provide service to competitors at wholesale rates is confirmed not only by the plain text of the Telecommunications Act of 1996—which lists only "telecommunications service," not "information service," in the resale provision—but also by the legislative history. An early version of what eventually became the Telecommunications Act of 1996 required incumbents to provide to competitors for resale not only "telecommunications service" but also "information service." *See* H.R. Rep. 104–204, at sec. 242(3), 1995 WL 442504 at 9 (1995) ("Resale.—The duty to

offer services, elements, features, functions, and capabilities for resale at economically feasible rates to the reseller … and not to impose unreasonable or discriminatory conditions or limitations on, the resale … of services, elements, features, functions, and capabilities in conjunction with the furnishing of a telecommunications service or an information service."). Congress eventually rejected this proposal, instead requiring incumbents to provide for resale only "telecommunications service." A reasonable inference is that Congress deliberately omitted "information service" from the resale requirement.

competitors at wholesale rates in order to allow competition to flourish—ought not be extended to voice mail. The FCC has concluded that that is indeed what Congress intended. The FCC's interpretation of the Act is reasonable and will be upheld.[10] The Florida Commission's contrary interpretation of the Act will be disapproved.

### Conclusion

The Florida Public Service Commission erred when it concluded that, under the Telecommunications Act of 1996, voice mail is a "telecommunications service" that an incumbent must provide a competitor at wholesale rates. Accordingly,

IT IS ORDERED:

The clerk shall enter judgment stating, "The order of the Florida Public Service Commission requiring Sprint–Florida, Incorporated, to provide voice mail to MCI Telecommunications Corporation and MCImetro Access Transmission Services, Incorporated, at wholesale rates, is vacated. The provisions of the Interconnection Agreement between Sprint–Florida, Incorporated, MCI Telecommunications Corporation and MCImetro Access Transmission Services, Incorporated, relating to resale of voice mail are declared invalid. The defendant Commissioners of the Florida Public Service Commission shall take such further action relating to resale of voice mail as may be appropriate in light of the Court's Order on Merits and this judgment. All other claims in this action are dismissed. All claims against the Florida Public Service Commission, in its name, are dismissed as redundant." The clerk shall close the file.

SO ORDERED.

---

**10.** Other district courts have reached a similar conclusion. *See U S West Comms., Inc. v. Hix,* Civ. Action No. 97–D–152, slip op. at 7 (D. Colo. June 23, 2000) ("The Court agrees with the reasoning of the decisions of the Minnesota and Iowa district courts as well as the clear pronouncements of the FCC and holds the Colorado Public Utilities Commissions . . . ERRED in requiring USWC to resell 'enhanced' or 'informational' services, such as voicemail. . . ."); *U S West Comms., Inc. v. Thoms,* Civ. No. 4–97–70082, slip op. at 46 (S.D.Iowa Jan. 25, 1999).