**VERIZON NORTH, INCORPORATED, Plaintiff,**

v.

**John G. STRAND, Chairman; John C. Shea, Commissioner; and David A. Svanda, Commissioner (In Their Official Capacities as Commissioners of the Michigan Public Service Commission), Defendants.**

**No. 5:98CV38.**

United States District Court, W.D. Michigan, Southern Division.

Dec. 6, 2000.

---

Jeffrey W. Bracken, Loomis, Ewert, Parsley, Davis, et al, Lansing, MI, for Verizon North Incorporated, known as GTE North Inc (General Telephone & Electric) dba GTE Systems of Michigan on original complaint, plaintiffs.

David A. Voges, Jennifer M. Granholm, Attorney General, Public Service Division, Lansing, MI, for John G. Strand, John C. Shea, David A. Svanda, defendants.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

Verizon North Incorporated, formerly known as GTE North Incorporated ("Verizon") is an incumbent local telecommunications carrier in Michigan. In this action Verizon has sued John G. Strand, John C. Shea,[1] and David A. Svanda, Commissioners of the Michigan Public Service Commission ("MPSC"), seeking declaratory and injunctive relief from the February 25, 1998, order of the MPSC. Verizon contests two provisions of the order: the provision that Verizon offer network elements and services for sale through published tariffs, and the provision that Verizon combine unbundled network elements for its competitors at their behest. Verizon brings this action under the Supremacy Clause, arguing that these provisions are in con-

---

**1.** Although Plaintiff advises in its motion for summary judgment that John C. Shea has been replaced as commissioner by Robert B. Nelson, the Court has not received a motion or stipulation for the substitution of defendants.

flict with and are preempted by the Federal Telecommunications Act of 1996 (the "FTA" or the "Act"), Pub.L. No. 104–104, 56 Stat. 110 (codified in various sections of 47 U.S.C.). Verizon also brings a separate and independent claim that enforcement of the order infringes its statutory rights in violation of 42 U.S.C. § 1983. This matter is currently before the Court on Verizon's affirmative motion for summary judgment.[2]

## I.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim then the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of a scintilla of .evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The proper inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## II.

Because the Court is limited by Article III, § 2 of the United States Constitution to the adjudication of actual cases or controversies, the Court's first consideration is whether this case is ripe for review.[3] *Dixie Fuel Co. v. Commissioner of Social Security*, 171 F.3d 1052, 1057 (6th Cir.1999). The basic rationale of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoted in *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997)). The ripeness inquiry requires the court to consider "whether the issues are fit for judicial decision as well as the hardship to the challenging party resulting from potential delay in obtaining judicial decision." *Dixie Fuel*, 171 F.3d at 1058 (citing *Thomas*, 473 U.S. at 581, 105 S.Ct. 3325). *See also Kardules v. City of Columbus*, 95 F.3d 1335, 1344 (6th Cir.1996). A case is "fit for judicial decision" where the issues raised are purely legal ones and where the agency rule or action giving rise to the controversy is final and not contingent upon future uncertainties or intervening agency action. *GTE North, Inc. v. Strand*, 209 F.3d 909, 923 n. 7 (6th Cir. 2000) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18

---

2. This Court previously dismissed this case for lack of jurisdiction. On appeal the Sixth Circuit Court of Appeals reversed that ruling, upheld this Court's jurisdiction under 28 U.S.C. § 1331, and remanded the case for determination on the merits. *GTE North, Inc. v. Strand*, 209 F.3d 909, 923 (6th Cir.2000).

3. The Sixth Circuit remanded this case for determination on the merits "if and when the district court finds [Verizon's] claims ripe for review." 209 F.3d at 923.

L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)).

■ Defendants contend this case is not ripe for decision because Verizon does not have on file any enforceable tariffs as directed by Case No. U–11281.

Defendants' assertion that there are no enforceable tariffs on file in Case No. U–11281, while technically correct, is factually irrelevant, as the lack of a tariff in Case No. U–11281 does not mean that there are no enforceable tariffs on file. Pursuant to the February 25, 1998, order in Case No. U–11281, Verizon was required to file a tariff. The tariffs Verizon filed under U–11281 were rejected by the MPSC. The MPSC has not required Verizon to submit corrected tariffs in Case No. U–11281. As Defendants themselves noted, the MPSC has "moved past" Case No. U–11281 and has conducted new cost proceedings in Case No. U–11832. The tariffs filed under the new cost proceedings implement the very same tariff filing requirement entered in Case No. U–11281, but are based upon updated cost studies. Verizon filed tariffs in Case No. U–11832 on August 2, 2000. Accordingly, there are enforceable tariffs on file that would currently enable a competitor to actually request access at the tariff rate.

The relevant inquiry in this case is "whether the ripeness inquiry demands that one of [Verizon's] competitors actually request access at the tariff rate before deciding the case, or whether the order itself gives rise to a justiciable claim because it imposes an immediate obligation on [Verizon] to sell network elements at predetermined rates." *GTE North,* 209 F.3d at 923 n. 7.

Because Verizon is challenging the MPSC's authority under the FTA to require the filing of a tariff, this suit raises a purely legal issue. *Burlington N. R.R. Co. v. Surface Transp. Bd.,* 75 F.3d 685, 691

(D.C.Cir.1996). The legal question presented is ripe for review because the filing of a tariff has "immediate effects on legal rights relating directly" to Verizon's primary conduct. *Id.* at 690. This is so because once filed, a tariff binds the filing party "with the force of law." *Id.* Thus, the order itself gives rise to a justiciable claim because it imposes an immediate obligation on Verizon to sell network elements at predetermined rates. The legal issue raised in this case would not be clarified by withholding review until a competitor actually requested access at the tariff rate and Verizon came into court requesting a temporary restraining order.

This case does not present an abstract disagreement. Because the Defendant's authority to order the tariff requirement presents a purely legal question and because the February 25, 1998, order imposes an immediate obligation to file a tariff that has a binding effect on Verizon, this Court is satisfied that this matter is ripe for review.

### III.

The MPSC's February 25 order requires Verizon to submit tariffs setting forth "the rates, terms and conditions for [Verizon] to provide access to unbundled network elements and interconnection services." MPSC 2/25/98 Order at 9–10. Verizon seeks a declaration that the tariffing requirement violates the FTA because it bypasses the party-specific negotiation and arbitration process crafted by Congress as the means for implementing the duties imposed by the Act. Verizon contends that pursuant to the Supremacy Clause, the State law must yield to contrary federal law.

Congress passed the Telecommunications Act of 1996, Pub.L. No. 104–104, 56 Stat. 110 (codified in 47 U.S.C.), in an effort to promote competition in local tele-

phone markets by ending regulated monopolies previously enjoyed by incumbent local exchange carriers ("LECs") such as Verizon. *GTE North,* 209 F.3d at 912. Under the FTA incumbent LECs are required to resell their telecommunications systems. 47 U.S.C. § 251(b)(1). This obligation is accomplished through the negotiation of interconnection agreements. If there is a request of interconnection, services, or network elements, "an incumbent local exchange carrier may negotiate and enter into a binding agreement." 47 U.S.C. § 252(a)(1). The incumbent LEC and the requesting telecommunications carrier have the duty to negotiate in good faith. 47 U.S.C. § 251(c)(1). If the parties are unable to negotiate an agreement, either party can petition for binding arbitration before the state commission under a set timetable. 47 U.S.C. § 252(b). The FTA sets the standards to be applied by the state commissions during the compulsory arbitration proceedings. 47 U.S.C. § 252(c) & (d).

Defendants dispute Verizon's contention that negotiation and arbitration are required to satisfy the FTA. Unless the State law is inconsistent with the FTA or FCC regulations, states are free to impose their own requirements that foster competition. State commissions can impose their own rules "in fulfilling the requirements of this part, if such regulations are not inconsistent with the provisions of [the FTA]." 47 U.S.C. § 261. State commissions can also impose additional requirements "that are necessary to further competition in the provisions of telephone exchange service or exchange access, so long as the State's requirements are not inconsistent with" the FTA or the FCC's regulations to implement the FTA. 47 U.S.C. § 261(b) & (c). The FTA provides that in prescribing and enforcing regulations to implement the FTA, the FCC shall not preclude enforcement of any regulation, order, or policy of a State commission establishing access and interconnection obligations, so long as the regulation, order or policy is consistent with the requirements of § 251, and does not substantially prevent implementation of the requirements and purposes of the FTA. 47 U.S.C. § 251(d)(3). The MPSC contends that its tariffing order is fully consistent with its authority as established by the Michigan Telecommunications Act and Michigan case law, that it fosters competition, and that it is not inconsistent with the FTA.

The issue for this Court's determination is whether the tariff requirement imposed by the February 25 order is merely an additional requirement imposed by the state that is necessary to further competition, or whether it is inconsistent with and preempted by the FTA.

The only court that has considered this issue ruled that a state public utility commission's tariff requirement conflicted with and was preempted by the Act to the extent the incumbent LEC was required to sell unbundled elements or finished services to a competitor that had not first entered into an interconnection agreement with the incumbent LEC pursuant to the Act. *MCI Telecommunications Corp. v. GTE Northwest, Inc.,* 41 F.Supp.2d 1157 (D.Or.1999).

In *MCI v. GTE* the court observed that although the FTA provides for the resale of network elements through interconnection agreements, the incumbent LEC is not entitled to separately negotiate different price terms with each competitive LEC. *Id.* at 1177. The state commission is not precluded from setting unbundled element prices and wholesale discounts for a particular incumbent LEC, and using those same prices and rates in all interconnection agreements involving that incumbent LEC. *Id.* The court noted that the FTA places on the state commission the burden of determining a just and reason-

able rate for the interconnection of facilities and equipment and the wholesale rates of telecommunications services, 47 U.S.C. § 252(d), and requires the incumbent LEC to make available any interconnection, service or network element provided under an approved agreement to any other requesting telecommunications carrier upon the same terms and conditions as those provided in the agreement. 47 U.S.C. § 252(i). The incumbent LEC also has a duty not to impose discriminatory conditions or limitations on the resale of its telecommunications services. 47 U.S.C. § 251(b) & (c).

Nevertheless, despite the state commission's duty to set rates under the FTA, the court found the tariff requirement to conflict with the federal law.

"The record reflects that the PUC [Public Utilities Commission] has not merely adopted a short-form interconnection agreement, along with a list of resale and unbundled element prices that will be incorporated in those agreements. Rather, the PUC has dispensed with the interconnection agreement altogether and is allowing [competitive LECs] to order services "off the rack" without an interconnection agreement."

41 F.Supp.2d at 1178. "[T]he state has done more than simply enforce additional state requirements. It has required GTE to sell unbundled elements or services for resale, to [competitive LECs], via a procedure that bypasses the Act entirely and ignores the procedures and standards that Congress has established." *Id.*

The MPSC notes that this court previously upheld its right to impose tariffs in *Michigan Bell Telephone Co. v. Strand,* 26 F.Supp.2d 993 (W.D.Mich.1998) (Enslen, C.J.). In *Michigan Bell* Judge Enslen noted that the § 252 negotiation procedure is not the sole means for the MPSC under the federal regulations to order and regulate telecommunications and held that tariffs are permissible as consistent state reg-

ulation approved the use of tariffs. *Id.* at 1000–01.

The ruling in *Michigan Bell* is not broad enough to cover the tariff at issue in this case. The tariff approved in *Michigan Bell* did not replace a negotiated interconnection agreement. The tariff merely operated to amend the interconnection agreement by replacing the shared transport tariffs with common transport tariffs. This amendment did not substantially prevent implementation of the FTA.

In contrast to the tariff approved in *Michigan Bell,* the tariff at issue in this case, like the tariff in *MCI v. GTE, supra,* completely displaces the interconnection agreement. The MPSC's order requires Verizon to file tariffs offering its network elements and services for sale on fixed terms to all potential entrants without the necessity of negotiating an interconnection agreement.

Defendants contend that the FTA does not displace any state law that furthers competition in local telephone markets, and that because their February 25 order is designed to further competition, it is not preempted by the FTA. Defendants oversimplify the preemption analysis. Even if the ultimate goal of the state law is to achieve the same goal of furthering competition that the FTA is designed to achieve, the state order may nevertheless be preempted "if it interferes with the methods by which the federal statute was designed to reach th[at] goal." *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 103, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992).

The FTA sets forth with some degree of detail the negotiation and arbitration process, leading to an interconnection agreement, by which the statutory goals are to be met. The Act specifies the timetable for negotiation and for petitioning for arbitration, § 252(b)(1); restricts the issues to

be considered at arbitration, § 252(b)(4)(A); establishes standards to be applied at arbitration, 47 U.S.C. §§ 252(c) & (d); sets a timetable for approving agreements adopted by negotiation or arbitration, § 252(e)(4); and provides for exclusive review in federal court. §§ 252(e)(4) & (6).

Such specificity indicates that the negotiation and arbitration process plays an integral role in achieving Congress's goals of enhancing competition. Congress designed a deregulatory process that would rely in the first instance on private negotiations to set the terms for implementing new duties under the Act. In contrast to the private, party-specific negotiation and arbitration system created by Congress, the process for sale of network elements required by the MPSC's Order is a public rule of general application. By requiring Verizon to file public tariffs offering its network elements at wholesale services for sale to any party, the MPSC's Order improperly permits an entrant to purchase Verizon's network elements and finished services from a set menu without ever entering into the process to negotiate and arbitrate an interconnection agreement. It thus evades the exclusive process required by the 1996 Act, and effectively eliminates any incentive to engage in private negotiation, which is the centerpiece of the Act. Accordingly, the Court finds that the tariff requirement in the February 25 order is inconsistent with and preempted by the FTA.

## IV.

■ The February 25 order requires Verizon to "offer unbundled network elements as combinations or platforms" at the request of entrants. MPSC 2/25/98 Order at 23. Verizon contends that to the extent the Order requires Verizon to act at the request of new entrants to assemble new combinations of elements that do not al-

ready exist, it violates the plain language of § 251(c)(3).

The FTA requires incumbent LECs to "provide such unbundled network elements in a manner that allows *requesting carriers to combine* such elements in order to provide such telecommunications service." 47 U.S.C. § 251(c)(3) (emphasis added). Verizon does not dispute that where the elements are already combined, and the requesting carrier seeks access to them in that combined form, the incumbent cannot separate them. However, Verizon does contest the requirement that it combine unbundled elements at the request of its competitors.

This issue was addressed in *Iowa Utils. Bd. v. F.C.C.*, 120 F.3d 753 (8th Cir.1997) ("*Iowa Utilities I*"), aff'd. in part, rev'd in part sub nom AT & T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). In *Iowa Utilities I* the Eighth Circuit struck down an FCC Rule, 47 C.F.R. § 51.315(c)-(f), that required incumbents to combine network elements for competitors. "While the Act requires incumbent LECs to provide elements in a manner that enables the competing carriers to combine them, unlike the Commission, we do not believe that this language can be read to levy a duty on the incumbent LECs to do the actual combining of elements." 120 F.3d at 813.

On remand the Eighth Circuit reaffirmed its previous ruling vacating the combination rule because it violates the FTA. *Iowa Utils. Bd. v. F.C.C.*, 219 F.3d 744 (8th Cir. July 18, 2000) ("*Iowa Utilities II*").

Here, Congress has directly spoken on the issue of who shall combine previously uncombined network elements. It is the requesting carriers who shall "combine such elements." It is not the duty of the [incumbent LECs] to "perform the functions necessary to combine unbundled network elements in any man-

ner" as required by the FCC's rule. See 47 C.F.R. § 51.315(c). We reiterate what we said in our prior opinion: "[T]he Act does not require the incumbent LECs to do all the work." *Iowa Utils. Bd.*, 120 F.3d at 813.

*Iowa Utilities II*, 219 F.3d at 759. The court reasoned that the Act's plain language requiring incumbent LECs to " 'provide such unbundled network elements in a manner that allows *requesting carriers to combine* such elements in order to provide such telecommunications service' ... unambiguously indicates that requesting carriers will combine the unbundled elements themselves." *Id.* (emphasis in original). Requiring incumbents to combine network elements for competitors "cannot be squared with the terms of subsection 251(c)(3)." *Id.*

Defendants rely on *Southwestern Bell Telephone Co. v. Waller Creek Communications, Inc.*, 221 F.3d 812, 821 (5th Cir. 2000), in support of their assertion that the Eighth Circuit decision does not prohibit the combination of unbundled network elements, but rather only holds that combinations are not required by the FTA. The discussion in *Southwestern Bell* regarding *Iowa Utilities* and combinations of network elements is found only in dicta. More importantly, it involves a mistaken interpretation of *Iowa Utilities I*. In *Iowa Utilities II* the Eighth Circuit clarified that the rule requiring the incumbent to combine elements must remain vacated because it violated the FTA. 219 F.3d at 759.

Where the network elements are not already combined in the incumbent's network, Congress made clear that the incumbent's only duty was to provide elements in "a manner that allows requesting carriers to combine such elements." § 251(c)(3). Under the FTA it is the duty of the requesting carriers, not the incumbent LECs, to combine the elements. *Iowa Utilities II* makes it clear that the FCC

cannot insert a bundling requirement consistent with the terms of the FTA. For the same reasons the state is also precluded from imposing such a requirement. Accordingly, the Court finds that the MPSC's order that Verizon provide bundling at the behest of competitive LECs conflicts with and is preempted by the FTA.

## V.

As a separate and independent basis for relief, Verizon contends that both of the alleged violations of the 1996 Act are also actionable under 42 U.S.C. § 1983.

■■■ Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Although this case involves the alleged preemption of state law by federal law, the Supreme Court noted in *Golden State Transit v. Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), that it would be "incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority." *Id.* at 108, 110 S.Ct. 444. In order to seek redress through § 1983, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (emphasis in original). In determining whether a particular statutory provision gives rise to a federal right the court considers the following three factors:

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously

impose a binding obligation on the States.

*Id.* at 340–41, 117 S.Ct. 1353 (citations omitted). Once it is established that a statute creates an individual federal right, there is a rebuttable presumption that the right is enforceable under § 1983. *Id.* at 341, 117 S.Ct. 1353. That presumption will be rebutted if Congress specifically foreclosed a remedy under § 1983 either expressly, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. *Id.*

Verizon contends that its FTA claim meets the *Blessing* test, and properly states a claim under § 1983.

■ This Court disagrees. No evidence has been presented that the FTA's provisions regarding negotiation and bundling were designed to benefit the Plaintiff or incumbent LECs generally. Congress enacted the FTA to foster competition in local telephone service. *See GTE North,* 209 F.3d at 913; *GTE Northwest, Inc. v. Hamilton,* 971 F.Supp. 1350, 1352 (D.Or. 1997); *GTE Northwest, Inc. v. Nelson,* 969 F.Supp. 654, 656 (W.D.Wash.1997). The intended beneficiaries of the Act are new entrants into the local telecommunications market. Where courts have concluded that the FTA provides a federal right to telecommunications companies, the finding has been in support of prospective entrants into the telecommunications market. *See, e.g. Cablevision of Boston, Inc. v. Public Imp. Com'n of City of Boston,* 38 F.Supp.2d 46, 54 (D.Mass.1999); (Congress intended FTA generally to benefit new entrants to the telecommunications business); *MCI Telecommunications Corp. v. Southern New England Telephone Co.,* 27 F.Supp.2d 326, 333 (D.Conn.1998); *National Telecommunication Advisors, Inc. v. City of Chicopee,* 16 F.Supp.2d 117, 121 (D.Mass.1998). Plaintiff is not a prospective entrant into the telecommunica-

tions market, and is not an intended beneficiary of the FTA.

Even in *AT & T Wireless PCS, Inc. v. City of Atlanta,* 210 F.3d 1322, 1329–30 (11th Cir.2000), *vacated on other grounds,* 223 F.3d 1324, 2000 WL 1210663 (11th Cir. Aug.25, 2000), cited by Plaintiff, where the Eleventh Circuit permitted a § 1983 action to enforce right under the FTA, AT & T was a prospective entrant, not an incumbent, in the personal wireless services market in Atlanta. Moreover, *AT & T Wireless* is distinguishable because it involved the city council's denial of a permit request without either a written denial or a written record. As such, the case implicated a due process right. No such individual right is involved in this case.

As noted in *Omnipoint Communications Enterprises, L.P. v. Newtown Tp.,* 219 F.3d 240, 245 (3rd Cir.2000), a claim under § 1983 could benefit a plaintiff greatly, primarily because the Civil Rights Act could potentially provide the plaintiff with an additional remedy, the recovery of attorney's fees, otherwise not available under the Telecommunications Act. Other courts have noted that "[t]he § 1983 statutory apparatus adds *nothing* to plaintiff's remedial armament under the TCA—except the opportunity to seek attorney's fees under § 1988 ... While the desire to recoup fees is understandable, the use of § 1983 in such a way trivializes this important statute and is inconsistent with its intent." *Omnipoint Communications, Inc. v. Penn Forest Township,* 42 F.Supp.2d 493, 506 (M.D.Pa.1999) (quoting with approval *National Telecommunication Advisors, Inc. v. City of Chicopee,* 16 F.Supp.2d 117, 120 (D.Mass.1998) (emphasis in original)). Similarly, in this case the substantive elements of Plaintiff's § 1983 claim are precisely the same as its preemption claim. The desire for attorney

---

fees appears to be the only purpose for Plaintiff's § 1983 claim.

The Court finds that Plaintiff has not stated a claim under § 1983. Plaintiff's request for declaratory relief under § 1983 will accordingly be denied.

### VI.

 Verizon contends that in addition to a declaration that the MPSC's order ·is preempted by federal law, Verizon is entitled to injunctive relief because it faces the threat of irreparable harm. Verizon contends that the tariffing and bundling requirements will result in Verizon losing competitive position. Competitive injuries resulting from the loss of fair competition is a form of irreparable harm that may warrant an injunction. *See Basicomputer Corp. v. Scott,* 973 F.2d 507, 512 (6th Cir. 1992). Injunctive relief was granted in *Illinois Bell Telephone Co. v. MCI Telecomms. Corp.,* 1996 WL 717466, at *9 (N.D.Ill.Dec.9, 1996), for unfair advantage in the local phone market. The court held that "[l]oss of market share ... is irreparable injury" because it would be difficult for an incumbent to regain market share once lost. *Id.*

Notwithstanding the case law support for injunctive relief, Plaintiff has presented no evidence from which this Court could infer that Defendants will not follow federal law as declared by this Court. This Court finding no cause for entering injunctive relief, Verizon's request for injunctive relief will accordingly be denied.

An order and declaratory judgment consistent with this opinion will be entered.

### ORDER AND DECLARATORY JUDGMENT

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Plaintiff Verizon North Incorporated's motion for summary judgment (Docket # 35) is **GRANTED IN PART and DENIED IN PART.** ·

**IT IS FURTHER ORDERED** that a **DECLARATORY JUDGMENT** is entered in favor of Plaintiff Verizon, declaring that the tariffing and bundling requirements of the MPSC's February 25, 1998, order are in conflict with and are preempted by the Federal Telecommunications Act.

**IT IS FURTHER ORDERED** that Verizon's request for a declaration that the tariffing and bundling requirements of the MPSC's February 25, 1998, order is actionable under 42 U.S.C. § 1983 is **DENIED.**

**IT IS FURTHER ORDERED** that Verizon's request for injunctive relief is **DENIED.**