**QWEST CORPORATION, Plaintiff,**

v.

**THE CITY OF GLOBE, ARIZONA, a municipal corporation; the City of Miami, Arizona, a municipal corporation; the City of Nogalas, Arizona, a municipal corporation; the City of Suprise, Arizona, a municipal corporation; the City of Tucson, Arizona, a municipal corporation, Defendants.**

No. CV 01–2500–PHX–JAT.

United States District Court, D. Arizona.

Aug. 15, 2002.

Paul James Mooney, Kendis K. Muscheid, Fennemore Craig, PC, Phoenix, AZ, David R. Goodnight, David M. Jacobson, Dorsey & Whitney, LLP, Seattle, WA, for QWest Corp.

Thomas K. Irvine, Lawrence J. Wulkan, Irvine Van Riper, PA, Phoenix, AZ, for City of Suprise, city of Gobe, City of Miami, City of Nogales.

Tobin Rosen, Office of Tucson City Atty., Tucson, AZ, Joseph Leonard Van Eaton, William Robert Malone, Nicholas Miller, Kenneth A. Brunetti, Miller & Van Eaton, PLLC, Washington, DC, for City of Tucson.

## ORDER

TEILBORG, District Judge.

Pending before this Court is the City of Tucson's Motion to Dismiss (Doc. # 14). All other Defendants have joined Tucson's Motion to Dismiss (Doc. # 15).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Qwest Corporation, provides communications services to residents in each of the Defendant cities. Each city charges Plaintiff for using the public right-of-ways to provide its services. Plaintiff primarily contends that the Federal Telecommunications Act of 1996, 47 U.S.C. § 151 *et. seq.*, prevents the Defendant cities from charging for the use of the public right-of-ways. Defendants offer several reasons why either this Court does not have jurisdiction to grant Plaintiff the relief it seeks in the complaint; or, alternatively, reasons why the requested relief should be denied.

## II. LEGAL STANDARD

Defendants allege three reasons why the complaint in this action should be dismissed: 1) this Court lacks jurisdiction over the complaint as a result of the Tax Injunction Act ("TIA"); 2) Plaintiff can not state a claim under 42 U.S.C. § 1983; and 3) this Court does not have the authority to issue a writ of mandamus against the Defendants named in this action. Defendants' Tax Injunction Act arguments are jurisdictional, and thus fall under FED.R. CIV. PRO. 12(b)(1). Defendants' argument regarding what they classify as a request for a writ of mandamus is also a jurisdictional argument; and, thus, is a motion under FED. R. CIV. PRO. 12(b)(1). Defendants' motion to dismiss based on the fact that Plaintiff cannot state a claim 42 U.S.C. § 1983 falls under FED. R. CIV. PRO. 12(b)(6).

"Federal Rule of Civil Procedure 12(b)(1) allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction." *Tosco Corp. v. Communities for a Better Environment,* 236 F.3d 495, 499 (9th Cir. 2001). Normally, on a 12(b)(1) motion, the court is, "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. In such circumstances, no presumptive truthfulness attaches to plaintiff's allegations, and the

existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (internal quotations and citations omitted). However, when considering a motion under 12(b)(1), if the jurisdictional issue is dependant on the resolution of factual issues relating to the merits of the case, the Court applies the 12(b)(6) standard of assuming that all of the allegations in the complaint are true. *Id.* Additionally, a motion to dismiss for failure to state a claim under 12(b)(6) is, "viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248–49 (9th Cir.1997) (internal citations and quotations omitted).

## III. DISCUSSION

As indicated above, Defendants make three arguments regarding why the complaint should be dismissed: 1) the TIA; 2) failure to state a claim under § 1983; and 3) lack of mandamus jurisdiction.

### A. TIA

Defendants allege that the TIA, 28 U.S.C. § 1341, prevents this Court from granting Plaintiff the declaratory relief it requests in the complaint. As Defendants admit, the jurisdictional bar of the TIA would apply in this case only if the charges Plaintiff is contesting are taxes. Plaintiff disputes that the charges are taxes and instead claims that the charges are right-of-way fees. Defendants assert three reasons why the charges at issue in this case are taxes and, therefore, are covered by the TIA.[1]

### 1. ARIZONA COURT OF APPEALS DECISION IN *U.S. West Communications, Inc. v. City of Tucson*, 11 P.3d 1054 (Ariz.App.2000)

Defendants argue that the Court of Appeals decision in *U.S. West* binds this Court to conclude that the charges at issue in this case are a tax. A federal court interpreting a state law is bound by decisions of the state's highest court. *In re Bartoni–Corsi Produce Inc.*, 130 F.3d 857, 861 (9th Cir.1997). Additionally, a federal court is bound by a state appellate court's decision if there is no convincing evidence that the state's highest court would decide the issue differently. *Id.* In this case, however, the parties agree that the issue of whether the charges in this cases are "taxes" is a question of federal law. Doc. # 23 at 16; Doc. # 14 at 6; *Wright v. Riveland*, 219 F.3d 905, 911 (9th Cir.2000). Therefore, the state court's decision is not binding on this Court.

Defendants, and in particular the City of Tucson, may have an argument that under the doctrine of preclusion, Plaintiff is precluded from arguing that the charges at issue are not taxes. However, Defendants do not make this argument. Instead they argue that this Court must give preclusive effect to the state court judgment under full faith and credit applying the state's preclusion rules. Neither the Court nor the Plaintiff disagrees with Defendants' assertion that this Court must bind a party to a valid prior judgment if all the elements of the state's preclusion rules are met. However, the party seeking to assert preclusion (*res judicata* or collateral estoppel) bears the burden of proving it. *See State Compensation Fund v. Yellow Cab Co. of Phoenix*, 197 Ariz. 120, 3 P.3d

---

1. In addition to the three reasons Defendants allege that the TIA would apply to this action, Defendants also allege that the Federal Telecommunications Act of 1996 has a provision which specifically allows state taxes. This provision is only relevant, however, if this Court determines that the charges at issue are a tax.

1040, 1044, ¶ 14 (Ariz.App.1999). On this record, Defendants have not attempted to show how the elements of preclusion under Arizona law apply in this case. Thus, the Court will not dismiss the complaint on the basis that Plaintiff is precluded from claiming that the charges are a fee instead of a tax because Defendants have not met their burden of proof on this issue. Nonetheless, if this is a burden of proof that Defendants believe they can ultimately carry, they may reassert this claim in the summary judgment phase of this case.

## 2. WHAT IS A TAX UNDER FEDERAL LAW

The parties agree that the test for determining whether a charge is a tax under federal law is determined by the test set forth by the Court of Appeals in *Bidart Bros. v. California Apple Comm'n,* 73 F.3d 925 (9th Cir.1996). In *Bidart,* the Court stated that this Court should consider, "three primary factors in determining whether an assessment is a tax: (1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." *Id.* at 931.

Leaving aside factor one, with respect to factor two, the parties dispute how many entities pay the charge that is at issue in this case. Plaintiff alleges that it alone pays the charge. Doc. # 23 at 13. Defendants dispute this fact. Doc. # 29 at n. 5. With respect to factor three, the parties dispute whether the spending of the funds verses the purpose behind instituting the charge is the relevant inquiry. Doc. # 23 at 14. Further, Plaintiff alleges that discovery is required to substantiate the answer to whichever inquiry is the appropriate one. *Id.*

■ On this record, and in the context of a motion to dismiss, the Court cannot determine whether the charges at issue are taxes or fees. Thus, the Court will deny Defendants' Motion to Dismiss on the grounds that the charges are a tax under federal law, without prejudice to the Defendants re-urging this argument following the conclusion of discovery.

## 3. JUDICIAL ESTOPPEL

Defendants also assert that Plaintiff is judicially estopped from arguing that the charges in this case are not taxes because Plaintiff has previously conceded that the charges are taxes. Defendants make this argument with respect to positions taken by Plaintiff in *City of Auburn v. Qwest Corp.,* 260 F.3d 1160 (9th Cir.2001) (*cert. denied* 534 U.S. 1079, 122 S.Ct. 809, 151 L.Ed.2d 694 (2002)). *See* Doc. # 29 at n. 2. Defendants also make this argument with respect to positions taken by Plaintiff in *U.S. West Communications, Inc. v. City of Tucson,* 198 Ariz. 515, 11 P.3d 1054 (Ariz.App.2000). *See* Doc. # 14 at n. 3.

■ Generally, "[f]ederal law governs the application of judicial estoppel in federal court." *Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597, 603 (9th Cir.1996). The Court may consider three factors in determining whether a party will be limited in the positions it can take by the doctrine of judicial estoppel: 1) whether a party's earlier position in clearly inconsistent with its later position; 2) whether the party has persuaded a court to accept that party's earlier position (such that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first court or the second court was misled); and 3) whether the party seeking to assert an inconsistent position would receive an unfair advantage or impose an unfair detriment on the opposing party if not es-

topped. *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782–83 (9th Cir. 2001).

In this case, Defendants raised the issue of judicial estoppel without addressing each of the elements of judicial estoppel until their reply to Plaintiff's supplemental brief as ordered by the Court. Judicial estoppel is not the type of claim that can be raised on a motion under FED.R.CIV. PRO. 12(b), unless Defendants claim it falls under 12(b)(6). In the context of a 12(b)(6) motion, the Court cannot go outside the scope of the pleadings unless the Court converts the motion to a Rule 56 motion for summary judgment. FED. R. CIV. PRO. 12(c). The Court has not and will not convert the current motion to one for summary judgment. For the Court to determine whether judicial estoppel would apply, the Court is required to go beyond the scope of the complaint and the motion to dismiss. The Court must go beyond the pleadings because the Court must determine whether the positions taken by Plaintiff in the cases cited by Defendant are actually inconsistent with positions taken by Plaintiff in this case. Thus, in the current procedural posture of this case, the Court will not use judicial estoppel to preclude Plaintiff from asserting a particular position.

If Defendants continue to believe judicial estoppel would apply on summary judgment, they may reassert it. However, Defendants must articulate exactly what positions were taken by Plaintiff earlier that are inconsistent with the positions taken in this case. Defendants will be required to cite to the exact location in a prior record where Plaintiff has taken the disputed position. Finally, Defendants shall show either an unfair advantage to

Plaintiff, or and unfair determent to Defendants as a result of the allegedly inconsistent position.[2]

## B. 42 U.S.C. § 1983

Plaintiff also brings a claim against the Defendant cities for violations of 42 U.S.C. § 1983. Plaintiff's theory is that the Federal Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* ("FTA") conferred on Plaintiff a federal right enforceable under 42 U.S.C. § 1983.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws,'" 42 U.S.C. § 1983. Although this case involves the alleged preemption of state law by federal law, the Supreme Court noted in *Golden State Transit v. Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), that it would be 'incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority.' *Id.* at 108, 110 S.Ct. 444. In order to seek redress through § 1983, 'a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.*' *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (emphasis in original). In determining whether a particular statutory provision gives rise to a federal right the court considers the following three factors:

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is

---

**2.** If Defendants reassert this argument, the parties are not required to re-file the exhibits that each party filed with their supplemental brief. A party may simply refer back to the

exhibits attached to either parties' supplemental brief (assuming the exhibit was properly authenticated when it was originally filed).

not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States.

*Id.* at 340–41, 117 S.Ct. 1353 (citations omitted). Once it is established that a statute creates an individual federal right, there is a rebuttable presumption that the right is enforceable under § 1983. *Id.* at 341, 117 S.Ct. 1353. "That presumption will be rebutted if Congress specifically foreclosed a remedy under § 1983 either expressly, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. *Id.*"

*Verizon North, Inc. v. Strand,* 140 F.Supp.2d 803, 811–12 (W.D.Mich.2000).

Thus, this Court must determine whether the FTA creates a federal right that Plaintiff may enforce. First, this Court must consider whether the statute was intended to benefit Plaintiff. The court in *Verizon* then determined that Verizon was not an intended beneficiary of the provisions of the statute because Verison was the existing telephone company and the statute was only intended to benefit new telephone companies. *Id.* at 812. Specifically, the *Verizon* court found:

"Congress enacted the FTA to foster competition in local telephone service. *See GTE North* [*, Inc. v. Strand* ], 209 F.3d [909], 913 [ (6th Cir.2000) ]; *GTE Northwest, Inc. v. Hamilton,* 971 F.Supp. 1350, 1352 (D.Or.1997); *GTE Northwest, Inc. v. Nelson,* 969 F.Supp. 654, 656 (W.D.Wash.1997). The intended beneficiaries of the Act are new entrants into the local telecommunications market. Where courts have concluded that the FTA provides a federal right to telecommunications companies, the finding has been in support of prospective entrants into the telecommunications market. *See, e.g. Cablevision of Boston, Inc. v. Public Imp. Com'n of City of Boston,* 38 F.Supp.2d 46, 54 (D.Mass. 1999) (Congress intended FTA generally to benefit new entrants to the telecommunications business); *MCI Telecommunications Corp. v. Southern New England Telephone Co.,* 27 F.Supp.2d 326, 333 (D.Conn.1998); *National Telecommunication Advisors, Inc. v. City of Chicopee,* 16 F.Supp.2d 117, 121 (D.Mass.1998). Plaintiff is not a prospective entrant into the telecommunications market, and is not an intended beneficiary of the FTA."

*Verizon,* 140 F.Supp.2d at 812.[3]

█ In this case, Plaintiff has alleged that it has been providing telecommunica-

---

**3.** The *Verizon* court further elaborated the rationale for its decisions as follows:

"As noted in *Omnipoint Communications Enterprises, L.P. v. Newtown Tp.,* 219 F.3d 240, 245 (3rd Cir.2000), a claim under § 1983 could benefit a plaintiff greatly, primarily because the Civil Rights Act could potentially provide the plaintiff with an additional remedy, the recovery of attorney's fees, otherwise not available under the Telecommunications Act. Other courts have noted that '[t]he § 1983 statutory apparatus adds *nothing* to plaintiff's remedial armament under the TCA—except the opportunity to seek attorney's fees under § 1988 … While the desire to recoup fees is under-

standable, the use of § 1983 in such a way trivializes this important statute and is inconsistent with its intent.' *Omnipoint Communications, Inc. v. Penn Forest Township,* 42 F.Supp.2d 493, 506 (M.D.Pa.1999) (quoting with approval *National Telecommunication Advisors, Inc. v. City of Chicopee,* 16 F.Supp.2d 117, 120 (D.Mass.1998) (emphasis in original)). Similarly, in this case the substantive elements of Plaintiff's § 1983 claim are precisely the same as its preemption claim. The desire for attorney fees appears to be the only purpose for Plaintiff's § 1983 claim."

*Verizon,* 140 F.Supp.2d 803 at 812–813.

tions services in Arizona for over 100 years. Complaint ¶ 1. Thus, the parties appear to agree that Plaintiff is not a new entrant into the marketplace. Based on the reasoning of the Court in *Verizon,* this Court is also inclined to conclude that Plaintiff is not an intended beneficiary of the statute. However, unlike the *Verizon* case, which was a motion for summary judgment, this is a motion to dismiss. Thus, this Court does not have a fully developed record regarding Plaintiff's exact status in each of the Defendant cities. Without this record, the Court cannot definitively conclude that Plaintiff is not an intended beneficiary of the statute. Thus, on this record the Court will deny the motion to dismiss. However, Defendants may re-urge this argument at the summary judgment phase of this case if they believe that the record will support that Plaintiff does not have a protected federal right.[4]

In addition to arguing that it has a federal right enforceable under § 1983 after doing a *Blessing* analysis, Plaintiff also asserts that the Ninth Circuit Court of Appeals has already determined that Plaintiff has a federal right under the FTA. *See Auburn,* 260 F.3d at 1175. Thus, Plaintiff argues that it is entitled to the rebuttable presumption that the right is enforceable under § 1983. Plaintiff further argues, citing *Wright v. City of Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), that the burden is on Defendants to show

that Congress intended to foreclose enforcement of the FTA through § 1983.

Plaintiff states that, "[a]s construed by the Ninth Circuit in *Auburn,* Section 253 creates both a 'virtually absolute' right in Qwest to be free of local regulation and specific, discrete rights concerning the scopes of localities' rights to regulate Qwest within the meaning of Section 253 preemption." Doc. # 23 at 24. In *Auburn,* the Court of Appeals stated, "[t]he preemption is virtually absolute...." *Auburn,* 260 F.3d at 1175. This Court does not agree with Plaintiff's assertion that the Ninth Circuit's interpretation of preemption in the *Auburn* case forecloses a *Blessing* analysis of whether a federal right exists, as the issue of whether of federal right exists for purposes of § 1983 liability was not decided by the *Auburn* court.

Accordingly, as indicated above, because the Court is required to go beyond the scope of the pleadings to determine Plaintiff's current status in each of the Defendant cities, the Court will deny the motion to dismiss, with leave to re-urge this argument on summary judgment when there is a fully developed record.

## C. MANDATORY INJUNCTION

Finally, Defendants ask that this Court deny one of Plaintiff's claims for relief as being beyond the power of this Court. Specifically, Defendants claim that Plaintiff's request that this Court direct Tucson to allow Plaintiff to operate in Tucson's rights-of-way is in effect a request for a

---

4. Defendants also argue that Plaintiff cannot avoid the jurisdictional bar of the TIA by bringing a claim under § 1983. Doc. # 14 at 12 (citing *American Commuters Ass'n v. Levitt,* 405 F.2d 1148, 1151 (2d Cir.1969)). Defendants further argue that this Court should not entertain an attack on a state tax system under § 1983 under the principle of comity. Doc. # 14 at 12 (citing *Fair Assessment in Real Estate v. McNary,* 454 U.S. 100, 106–107,

102 S.Ct. 177, 70 L.Ed.2d 271 (1981)). As indicated above, the Court cannot determine in the context of a motion to dismiss whether the charge at issue is a right-of-way fee or a tax. Thus, the Court cannot decide whether the § 1983 claim is barred for the reasons stated in this footnote until the Court first determines that the charge is a tax. Therefore, Defendants may re-urge this argument on summary judgment.

writ of mandamus. Defendants then go on to argue that this Court does not have the authority to issue a writ of mandamus against a non-federal officer.

Plaintiff argues that it is not requesting a writ of mandamus. Plaintiff also argues that it is not seeking a mandatory injunction. Instead, Plaintiff argues that all it is seeking is an enforcement of this Court's declaration, if this Court declares that the charges at issue in this case are void because they are preempted by federal law.

The Court finds that the issue of the type of relief to which Plaintiff may be entitled will only be ripe for this Court's consideration if the Court grants Plaintiff the declaratory relief it requests on the preemption issue. Thus, the Court need not decide at this time whether it is within the Court's power to give Plaintiff all of the relief requested in the complaint. Therefore, Defendants may re-raise this issue on summary judgment, and the Court will consider it only if the Court finds Plaintiff is entitled to the requested declaratory relief on the preemption issue.

## IV. CONCLUSION

There are two other outstanding motions that the Court needs to address. The first is a Motion to Strike References to Unpublished Opinions (Doc. # 36). The same Motion was also filed a Doc. # 38. At Doc. # 46, the Motion to Strike was withdrawn. Because the Motion at Doc. # 36 is the same as the Motion at Doc. # 38, the Court will treat withdrawal as applying to both Motions to Strike.

Defendants have filed a Motion for Judicial Notice, requesting that this Court take judicial notice of the reply brief filed by Plaintiff in the *Auburn* case (Doc. # 40). No response or opposition to this Motion was filed. In the context of a motion to dismiss for failure to state a claim, the Court generally will not consider items outside the complaint and the moving papers without converting the motion to a motion for summary judgment. *See* Fed. R. Civ. Pro. 12(c). In this case, the Court has declined to convert the motion to a motion for summary judgment. While Defendants have requested that the Court take judicial notice of the above referenced brief, Defendants have not referenced the document in their pleadings to make the document relevant to this case at this point. Thus, the Court will deny the request to take judicial notice of the brief. If at a later point Defendants determine that they can show the relevance of this document, they may renew their request.

Based on the foregoing

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. # 14) is denied;

**IT IS FURTHER ORDERED** that both Motions to Strike References to Unpublished Opinions (Docs. # 36 and # 38) are deemed withdrawn by Doc. # 46;

**IT IS FURTHER ORDERED** that the Motion for Judicial Notice (Doc # 40) is denied without prejudice;

**IT IS FURTHER ORDERED** that Tucson's Motion to Accept Late Filing (Doc. # 70) is granted.[5]

---

**5.** The Court is granting this request even though the pleading does not comply with local rule 1.9(c) because the Court is confident that all future pleadings will so comply.